The District Court here erred in applying the preponderance of evidence standard to increase Mr. Morales' sentencing guideline calculation by six levels, rather than applying the clear and convincing standard as required by Jordan, Mesa State, ASUS, and Valencia, and as recently reaffirmed by this Court's decision in the Valley case. In so doing, the Court committed procedural error. Based on that is our request that this Court vacate the sentencing and remain with instructions to apply the correct standard, which is clear and convincing. Here, the six-level increase under Jordan had a disproportionate impact on Mr. Morales' advisory guideline range. As we know, Mr. Morales was involved in an incident with another vehicle. He threw a chisel and it inadvertently struck the other vehicle door. It is our position that rather than applying the 2A2.2 guideline that the Court applied, it should have applied 2A2.4 because there was insufficient evidence that Mr. Morales had intended to cause bodily harm to the driver of the other vehicle. We also know under the Jordan case that there are two factors that are relevant to the Court's clear and convincing standard should apply. The first of those factors is whether or not the offense level was increased by no less than four. Here, we know the offense level was increased by six levels. We do not believe that the government would contest that that factor has not been met. Here, the base offense level was 11 with an advisory guideline of 27 to 33 months. The government's position was under 2A2.4, and the Court found that his advisory guideline range was 51 to 63 months under the preponderance of evidence standard. Now, the sixth factor, which is from Jordan, is sort of the heart of the issues here, Your Honors. Whether or not an 88% increase in the advisory guideline range is sufficient. The factor is whether or not the guideline range was doubled. Here, one additional level would have resulted in Mr. Morales' guideline range absolutely being doubled. Instead, we are three months short of a doubling of the advisory guideline range. Ms. Morales went from what was a relatively short sentence of a little bit over two years to an advisory guideline range of under five years. The question is whether that's exceptional. So what was her, the original guideline range? The original guideline range, Your Honor, that we had proposed was 27 to 33 months. Okay. And what was she sentenced to? He was sentenced to 30 months, Your Honor. So at the midpoint of the original guideline range? That is correct, Your Honor. He was sentenced to the midpoint of the correct guideline range. However, in this case, the District Court found a 41% variance from the 2.2.4, 2.2, a 2.2 guideline range based on significant mitigating factors. It is our position that even though Mr. Morales was ultimately sentenced to a sentence within his guideline range, that it is, the Court still committed error because it did not keep in mind what was correct. Because the same mitigating factors were applied and made it lower. That's your argument? Precisely. If the Court had granted a 41% variance from the guideline range we were requesting, that sentence would have been in keeping with the 12-month sentence we had requested for Ms. Morales at his sentencing hearing. Now, Your Honor, in considering the, whether or not due process considerations rose to the level of requiring the government to prove by clear and convincing evidence, those factors, there is no bright-line rule. What the government is requesting is that the Court adopt a bright-line rule. We would ask that this Court reject that approach to say that three months is totally insufficient versus a sentence that is three months longer doubling would be sufficient. It is our position that that simply does not make sense under this circumstance. There's a couple of factors that we also ask the Court to consider. Also, this is not, there's no bright-line rule here. What we know is that if Mr. Morales had gone to trial and lost, there would have been a doubling because the benefit of acceptance of responsibility. He is in a position where he is entitled to a lower standard, as argued by the government, of preponderance versus clear and convincing had he gone to trial and lost. It's our position that there are those circumstances that that would be a completely irrational result. That a similarly situated individual is entitled to clear and convincing because that person went to trial versus Mr. Morales. The argument is that the government couldn't prove clear, by clear and convincing evidence of intent and the Court used, are you conceding that the government proved the intent by preponderance of the evidence? No, Your Honor. It is our position that either under preponderance or clear and convincing that the government did not prove that Mr. Morales, when he threw the chisel at the vehicle door, inadvertently striking the window, had an intent to cause bodily harm to the agent. What is your view of what he intended to do? Your Honor, our view is that his intent was to cause vehicular damage to the car. As the Court is aware, the District Court below gave great weight to Mr. Morales' statements that he was intending to strike the door. He made two statements. The second statement was that he would do it again. The second statement, we believe, does not go to his intent. I mean, when he says he'd do it again, you take the totality of the circumstances. Why wasn't that sufficient for preponderance of the evidence? Your Honor, we submit that was not sufficient because all that did was reinforce his original statement, which did not evidence an intent to cause bodily harm. It evidenced an intent to cause damage to the door. His intent in hitting the car, perhaps to frighten the other driver, was not an intent to actually strike the occupant of the vehicle. It is our position that the evidence, at best, demonstrated that he had inadvertently struck the vehicle window and it had shattered during the altercation. Pretty clear that the District Court didn't believe what he had to say about his intent? No, Your Honor. What was clear is that the District Court did not give credit to some of his earlier statements about what preceded the altercation. However, the Court did give great weight to his statement of his intent at the time and found that his statement that he was, one, intending to hit the door and that he would do it again, the Court found those statements meaningful in arriving at its conclusion that he had the intent to cause bodily harm. And the Court found credible and agreed with his statement that he intended to hit the door? It was clear from the record that the Court said he gave great weight to those statements in considering, in finding that he had met, in the Court's finding that there was preponderance of the evidence that he intended to cause bodily harm to the driver. You're down to about 2.45. Do you want to reserve? Yes, Your Honor. I would like to move on to the third, second issue, which is, here, Your Honor, the type of damage and injury that we're talking about here I think is important also to keep in mind. It is not, what we're talking about is a general intent crime with a very specific intent guideline provision. And that guideline provision, and particularly when we're talking about the type of bodily injury that is involved here, we can see that throwing a chisel at a car or a vehicle, while that might be dangerous or reckless, it does not rise to the level of the type of bodily injury that is contemplated by this guideline. Your Honor, I see I would like to reserve my two minutes and come back. Very good. Thank you. Slobe. Good morning, Your Honors. May it please the Court. My name is Alexis Slobe, and I represent the United States in this appeal. There was nothing exceptional about Morales's sentencing. Under either a preponderance or a clear and convincing standard, a burden of proof, the evidence demonstrated that Morales intended to cause bodily injury when he threw a chisel through the window of his victim's car while both cars were driving down the freeway at 80 miles per hour during the morning commute. And then when Morales later said that he would break his victim's window all over again. The Court, however, was correct to apply the preponderance of the evidence standard, because even if the Valencia factors do apply to this case, they point in favor of the preponderance standard and the application of the aggravated assault guideline, because there was no extremely disproportionate effect on Morales's sentence relative to the offense of conviction, as the cases that Morales himself has cited show. Starting with the issue of the application of the Valencia factors, even if the Court does apply them, looking at the cases Morales has cited, it's clear there was no extremely is a useful counterpoint, because there, there was an 11-point difference in levels, and the sentence was more than quintupled. It went from 1 to 7 months up to 37 to 46 months. The Jordan case, there was a 9-level difference, and again, the sentence there more than doubled. The Hopper case, the sentence was based on acquitted conduct. Again, it more than doubled, and there was a 7-level increase. The Mezos de Jesus case, again, a 9-level increase, more than doubling the length. And in that case, the defendant was convicted of one crime and sentenced for another. The Court has never found extreme disproportionality on facts like these, where at most, only the fifth factor favors defendant, which is the difference in the number of levels, where the sentence is based on the offense of conviction, and where the defendant actually receives a sentence within his own guidelines' range. This Court's decision in Pike, in Pike, the — this Court remarked that the Court has never applied the higher burden of proof, where it is only the fifth factor, the difference in the number of levels, that favors the defendant. Defense counsel mentioned that — or argued that, well, perhaps this — this was a close case. The sentence was almost double. But the test here is whether the sentence was extremely disproportionate. It's not — it's not a question of was it — was it close. And in certain cases, such as the Felix or the Riley case, the sentences have been almost more than double or even just about double, and the Court hasn't found an extremely disproportionate effect there. That's simply not the test. The — in addition, the finding here that Mr. Morales intended to cause bodily injury was not clear error. There are three main bases that support that finding, and the most important is the offense itself. Mr. Morales pulled up next to his victim while they were going 80 miles per hour on the freeway, and he threw a chisel, breaking the glass of his victim's car. The Court — and the Court found that Mr. Morales' self-serving statements that he intended to hit the door weren't — weren't credible. The Court described them as falsehoods. What the Court did credit was Mr. Morales' statement that if he saw the agent again, he would break his window again. Did he actually make that precise statement? Your Honor — Did this say, I would do it again? Your Honor, the — the statement is from an interview report, so it's not a verbatim transcript to begin with. Right. So I'm just wondering how much reliance should be given to that statement when we don't really know what it was. Well, I believe, Your Honor, since the standard is clear error, that — In analyzing whether or not there's clear error, I'm wondering how much reliance we should put on that statement. Your Honor, I think that we should put — we should put weight on that statement, because the interview report does indicate that Morales indicated that he would — that he would break the window again. And someone who just intended to hit the door, when they see the window break, they wouldn't say that. They would — in that moment, they would be remorseful. I'm wondering how you actually prove intent to commit bodily harm, even by a preponderance. I mean, just throwing an object, does that prove intent to commit bodily harm? Your Honor, I think throwing an object, that fact alone, may not always demonstrate intent to commit bodily harm, but we don't have just throwing an object here. Well, you rely on the fact they were — you pulled up next to him, and they were going 85 or 80 miles an hour on the freeway. But when I look at that fact, I think, well, how — how good can your aim be when you're driving at 85 miles an hour? How can you be formulating, I'm going to get his head, as opposed to you're just having road rage and you throw the chisel? Your Honor, I think regardless of whether you have road rage or it's something you've thought about, in that moment, you are so angry that you have intent to cause bodily harm. And the — the car the agent was driving was a large SUV. So it's clearly reckless. I mean, there's no question it's reckless. I'm just wondering, what is it about — what proof — what gap in proof does the government offer evidence, even as to preponderance? Your Honor, I think that intent is — can be — can be challenging because it, of course, requires — Circumstantial. Yes, yes. It takes circumstantial evidence into consideration. Exactly. And I think that pulling out from under — from behind Agent Curtis, pulling up next to him, picking up a chisel, throwing it with enough force to shatter the glass, I think that that alone, even regardless of what Morales said afterwards, would be enough to find intent to cause bodily injury. And when you're driving down the freeway at 80 miles per hour and you throw that chisel — No matter where it lands, it could result in bodily injury. Exactly, Your Honor. Is that your argument? That — Because that's what I'm thinking. Maybe that's the answer. It's — Your Honor, in some ways, we're very lucky that it was a trained special agent driving the car who's used to driving under stressful situations because I know for many of us, if a chisel was thrown directly at our window and broke it, when we were going at that speed on a crowded freeway, there would be an accident. Can I ask you about the — your argument in the brief that this whole area of the law doesn't apply to base offense-level calculations? How is that position consistent with the Mesas de Jesus and the Pineda do Val cases, which seem to apply the test when, as here, you start with one guideline and it cross-references you and flips you to another? It applies it to those types of determinations, and that seems to be what we have here. So I want to know how you respond to those cases. Yes, Your Honor. I have a couple of responses. First of all, in neither of those cases was this issue squarely presented. So the Court, in those cases, applied the Valencia factors but didn't have before it the argument that the Valencia factors do not apply outside the context of guidelines enhancements. And when that argument has been squarely presented to the Court, in Felix, in Dare, in Collins, each time the Court has said that the Valencia factors only apply in the context of sentencing enhancements. Now, beyond — Do you have a case that involves this kind of a cross-reference flip from one guideline to another where we have held that it doesn't apply? I am — I am not aware of a case holding that, Your Honor. But I would submit also that this case is different because this case involves the initial choice of a guideline based on the offense of conviction. Mezastahizuz and Pineda-Doval were both cases where the Court applied a cross-reference to sentence the defendant based on uncharged conduct. And I would also like to point this Court to the Hopper case, which is one of the case defendant sites. And there, the Court applied the clear and convincing burden to the enhancements. But in that case, the appellants also made an argument that the Court had sentenced them under the wrong guideline. And there, the Court simply referred to Section 1B1.2 of the sentencing guidelines, which directs the Court to apply the most appropriate guideline without applying any particular heightened burden of proof. So I think that Mezastahizuz and Pineda-Doval, the question, was not squarely presented to the Court. And those cases are distinguishable because they involved the application of the cross-reference to sentence the defendant based on uncharged conduct. And in addition, Your Honor, even if the Valencia factors do apply, those cases — in those cases, there was a much more extremely disproportionate effect. One case involved a nine-level difference. The other case involved a 12-level difference. And in both of those cases, the sentences were more than double, and they were based on uncharged conduct. I see I'm out of time. If there are no further questions, the government would ask the Court to affirm the sentence. Thank you. Thank you, counsel. Thank you, Your Honor. Just a couple points. With respect to Judge Collins' question about the cross-reference, the government is simply mistaken. The cases, United States v. Lynch, United States v. Mezastahizuz, as well as Pineda-Doval, all apply the disproportionate impact test where a sentencing enhancement is a result of a cross-reference. Here, we have a cross-reference. 2A2.4 directs the district court to refer to 2A2.2 in cases where it involves an aggravated assault. So it's our position that, under this Court's precedent, that this Court, the district court should have, in determining that cross-reference, used — applied the disproportionate impact test and applied the clear and convincing standard to apply 2A2.2. Your Honor, there's a couple points about the exceptional nature of the sentence and whether or not the sentence was exceptional. While the sentence in this case does not result in a guideline range that is as high as some of the cases cited by government counsel, it was still significant. We have here a case that is three months short of a doubling. It cannot be the case that three months would constitute the difference between something that is exceptional and something that is not exceptional under these circumstances. And it only results in a not-of-a-doubling because Mr. Morales pled. Also, additionally, Your Honors, here we have a sentencing recommendation from probation of 12 to 15 months. It is no doubt exceptional when a defendant who thought they were looking at a sentence of, on the low end of possibly 27 months, a little bit more than two years in prison, all of a sudden are now looking at a sentence of upwards of nine months short of five years in prison. That is exceptional under these circumstances. Also, with respect to the—I seem out of time. If I could have a couple more minutes, Your Honor. Whether or not it could have caused damage to the vehicle we believe is not the issue. The fact is whether or not he intended to cause damage. We would cite for the court the ER at—ER 105 and 106 where he states his intent to hit the door at that point, Your Honor. With that, we've submitted and ask that this court vacate the sentencing and remand with instructions to apply the correct standard to this sentencing enhancement. Thank you, counsel. Thank you both for your arguments this morning. The case just argued to be submitted for decision.
judges: Thomas, Wardlaw, Collins